ELLIS, Judge.
On the 12th of January 1951 at approximately 1:30 P.M. on a clear, dry day, a truck belonging to defendant Holmes & Barnes, Ltd. and insured by the Great American Indemnity Co. was being driven in the town of Port Allen on Louisiana Highway 168, and upon making a left hand turn approximately 85 feet west of Twelfth Street was struck on the right rear corner of its trailer by a 1936 Ford coach automobile owned and being driven by the plaintiff Earl A. Leonard. As a result of the collision plaintiff filed this suit against Holmes & Barnes Ltd. and its insurer on January 3, 1952.
On June 4, 1952, one year and six months after the accident sued upon, Coal Operators Casualty Co. filed a petition of intervention alleging that it was the compensation insurer of the State of Louisiana and the Louisiana Department of Wild Life and Fisheries by whom the plaintiff Leonard was employed on the date of the accident, and accordingly it had paid to the plaintiff up to June 1, 1952, $2,040 and further had paid plaintiff’s medical expenses totalling $1,656.18, and therefore prayed for judgment for $3,696.18 with legal interest thereon from date of judicial demand plus reasonable attorney fees.
To the petition of intervention defendants filed exceptions of no cause or right of action and in the alternative a plea of prescription of one year. While the minutes fail to reveal specifically what disposition was made of the exceptions and plea, there was judgment in favor of the intervenor, and hence they must be considered as having been overruled.
Plaintiff alleges in his petition that as he was about to pass defendant’s truck, the driver apparently made a left hand turn to enter the driveway into an establishment known as Mims Store, and that this maneuver was performed without any warning which was visible to plaintiff and was so quick and unexpected that there was nothing he could do to avoid a collision although he attempted to do so by applying his brakes and turning to his right.
Specifically plaintiff charges the following negligence to the driver of defendant’s truck:
“(a) The driver of the said truck failed to maintain an adequate and proper lookout, which amounted to negligence on his part and which was. a proximate cause of the accident.
“(b) The driver of said truck failed to give any signal or warning of his intention to turn left, or if any such signal was given, failed to give it in a. manner which could be seen by following motorists, which amounted to negligence on his part and which was a. proximate cause of the accident.
“(c) The driver of the said truck was negligent in turning the vehicle to-the left when he saw, or should have seen, that by such action a collision-was unavoidable, and without first ascertaining that such a movement could be made in safety, which amounted to-negligence on his part which was a. proximate cause of the accident.”
*111 In the alternative plaintiff plead that the driver of the defendant’s truck had the last clear chance to avoid the accident.
The defendants answered denying any negligence on the part of the operator of the truck and alleging that plaintiff’s injuries and damages were due solely and entirely to his own carelessness and negligence for the following reasons:
“a. At the time and place of the accident, the plaintiff, Earl A. Leonard, was operating the automobile which he was driving in a wanton, heedless, careless, reckless, imprudent and unlawful manner taking into consideration the location, time of day, visibility and the fact that Leonard was driving on a heavily traveled street within the City Limits of Port Allen, Louisiana, without having due regard to the traffic properly using said street, or the life, limbs, or the property of others, all of which was and is an immediate and proximate cause of the accident.
“b. At the time and place of the accident, the plaintiff, Earl A. Leonard, was operating the automobile which he was driving, without keeping a proper lookout for other traffic on the street on which he was traveling, all of which was and is an immediate and proximate •cause of the accident.
“c. At the time and place of the accident, the plaintiff, Earl A. Leonard, •did not have the automobile which he was driving under proper control so as to enable him to avoid the collision with the trailer by stopping or turning the automobile which he was driving, which insufficient control of said automobile on the part of Leonard was and is an immediate and proximate cause •of the accident.
“d. At the time and place of the accident, the plaintiff, Earl A. Leonard, was operating the automobile which he was driving at a rate of speed greatly ■in excess of the speed limit allowed by .Section 45 (A) (B) of the Ordinance entitled ‘Regulating Traffic upon the Streets of the Town of Port Allen, Louisiana, Prescribing Penalties for the Violation of this Ordinance and Repealing all Ordinances in Conflict herewith,’ adopted by the Mayor and Board of Aldermen of the Town of Port Allen, Louisiana in 1950, all of which was and is an immediate and proximate cause of the accident.
“e. At the time and place of the accident, the plaintiff, Earl A. Leonard, was operating the automobile which he was driving while under the influence of intoxicating liquor in violation of the Laws of Louisiana and Section 52 of the Ordinance entitled ‘Regulating Traffic upon the Streets of the Town of Port Allen, Louisiana, Prescribing Penalties for the Violation of this Ordinance and Repealing all Ordinances in Conflict herewith,’ adopted by the Mayor and Board of Aider-men of the Town of Port Allen, Louisiana in 1950 all of which was and is an immediate and proximate cause of the accident.”
In the alternative defendants also plead contributory negligence for the five reasons heretofore quoted.
This case was tried on September 3, 1952 and decided on May 12, 1955. We mention this fact without intending any inference that our Learned Brother of the Lower Court was in anywise responsible for this delay but merely because it was argued both orally and in briefs as making a difference in the so-called manifest error rule. There was judgment in favor of the plaintiff and intervenor.
The District Court in its written reasons concluded:
“ * * * Obviously, therefore, the sole and proximate cause of said accident is the total failure of Tillman to assume his legal responsibility and follow the law which required him to exercise the highest degree of caution before and while attempting his said left turn across Highway 168 as aforesaid and placed upon him (Tillman) the *112 responsibility for seeing that such a dangerous maneuver could be made in safety to approaching traffic as well as to all concerned. It is clear that Tillman in making said left turn was deeply and solely concerned with the difficulty of driving his large truck and trailer in and over the small drive-in entrance to said store especially since there existed at that time a hole on the side of said private road. And it is an indisputable fact that Tillman by his said heedless and careless driving of the truck and trailer left across said highway created a sudden emergency which was the proximate cause of the accident herein. Surely, if Tillman before making his said left turn, had looked for approaching traffic as the law requires, he would have seen what he should have seen and that is the approaching Leonard car close by in the south lane attempting to pass him, and Tillman could have and in accordance with the law of self-preservation would have remained where he was on the north side of said highway until after Leonard had passed him and there would have been no accident, and Leonard would not have been put by Tillman in the perilous position of attempting to extricate himself from the dangerous position resulting from said sudden emergency created by Tillman. And it is also apparent and undeniable that the Defendants herein have failed to carry the burden of proof as required by law in cases where contributory negligence is set up as a defense and that defendants have totally failed to establish affirmatively by a preponderance of evidence the contributory negligence of plaintiff Leonard alleged in this case.”
From an adverse judgment the defendants have appealed and the plaintiff has answered asking that the award be increased.
It might be well to first discuss this case from the standpoint of the negligence of the operator of the defendant’s truck as a proximate cause of the collision.
. It is shown that Highway 168 is a two lane paved highway leading west from Port Allen with 18 feet of concrete and 10 feet of shoulders on each side thereof and that the- motor vehicle was a truck and trailer and at the time was half loaded and weighed approximately nine thousand pounds. It was being driven west in order to make a delivery to a small grocery store located south of the highway known as Mims Grocery. Twelfth Street intersects the highway at approximately 85 feet from a gravel road leading to the south to Mims Store. The operator of the truck testified that he was traveling on the north or right hand lane of Highway 168, and a car was. approaching from the opposite direction, and that when he got to the Twelfth Street,, which was approximately 85 feet from the gravel road leading to Mims Grocery where he intended to make the left hand turn, he looked in his rear view mirror and he saw plaintiff’s automobile “about 400 feet behind me,” and after that he did riot look to his rear again but stated that he was watching the car approaching which passed him approximately 50 feet from the road leading into Mims Grocery. Prior to this time he had been driving approximately 20 miles per hour and stated that he slowed down to 15 miles per hour, put out his hand and turned to his left toward the Mims Grocery road. He stated that when his front wheels had gone off of the paved portion of the highway and entered the Mims. Grocery graveled road, and his tractor wheels were also off the pavement and his rear trailer wheels at the edge of the black center line of the highway he felt and heard the impact of plaintiff’s car colliding with the extreme right rear corner of his trailer body. This witness convicts himself of. negligence in failing to look to his rear just prior to attempting the left hand turn,, but whether such negligence is the sole proximate cause of the accident would depend upon a determination of the location of plaintiff’s car at the time he began the left hand turn.
The plaintiff’s testimony is not too satisfactory for he would have the Court believe that at the time the driver of the truck began his left hand turn he had been traveling at approximately 35 miles per hour and had stepped up to 45 miles per hour and pulled into the south traffic lane for the purpose of passing the truck and trailer; and the front end of his car was just past the rear of the trailer, that he im *113 mediately applied his brakes and pulled to his right and struck the right hand corner of the trailer and after that he remembered nothing. This version is impossible on its very face for had he already been in the south lane traveling at a speed of 45 miles per hour with the front of his car at least even with the rear of the trailer, it would have been utterly impossible with the trailer traveling not faster than 15 miles per hour for him to have put on the brakes, pulled to his right and come in contact with the right rear ’corner of the trailer.
The testimony of all the other witnesses in this case also shows that plaintiff’s version was not correct. Trooper Walker of the State Police investigated this accident and he testified that it happened in the Town of Port Allen on St. Highway 168 at the entrance to the little store. The speed limit at this point as shown by signs was 25 miles per hour. There were skid marks from the plaintiff’s car which the officer stepped off for a distance of 36 feet before it struck the right rear corner of the trailer, and the impact knocked the trailer part of the truck in an arc 18 feet in distance as shown by the tire marks of the trailer, and the plaintiff’s car thereafter went a distance of 114 feet and would have gone further but was stopped by an embankment of a ditch. The car was a total wreck, but particularly shown as having borne the brunt of the collision was the left front fender, hood and on back into the left part of the body of the car. It was estimated as totally demolished. It was the opinion of this witness that the plaintiff’s car could not have moved the heavy trailer in an 18 foot arc as it did at a speed of 45 miles per hour but possibly could have done so at 50 miles per hour. The trooper further located the approximate point of the collision on the highway from the debris and skid marks, and he placed the rear end of the trailer at approximately 2j/¿' to 3' north of the center line in the west bound lane. It was the opinion of Trooper Walker that the plaintiff’s “vehicle was traveling at a high rate of speed to have went in the manner in which it did.” At the moment of impact the trailer portion of the truck was diagonally in the east bound lane with the right rear corner protruding further into the traffic lane than the left side.
Every witness who testified in the case stated that the skid marks from the application of the brakes of plaintiff’s car, which Officer Bourg of Port Allen estimated at 30 feet in length and which Trooper Walker measured by stepping the distance off at 36 feet, were all in the west bound traffic lane. Plaintiff’s counsel argues that plaintiff, as he stated, was- in the east bound or south lane preparatory to passing the truck when he first observed the truck intending to make a left hand turn, and that during the reaction time he got back into the west bound traffic lane and therefore there were no skid marks in the east bound traffic lane. Counsel for the defendant counters, and we think correctly, with the proposition that the application of the brakes required the same reaction time as the turning of the car to the right. In other words;, from the testimony the plaintiff was not in the east bound traffic, lane preparatory to passing the truck just prior to applying his brakes. All the witnesses except one, the helper on the truck, testified that the skid marks were fairly straight, whereas this witness, although he positively testified that the skid marks were all in the west bound traffic lane, testified that they were on an angle to the right. This angle could be figured for the right rear corner of the trailer at the moment of impact was approximately 2^/2 to 3 feet in the west bound traffic lane and the skid marks were 36 feet to the rear, all in the west bound lane, therefore, if plaintiff was traveling close to the black center line at the time he applied the brakes, he had angled over 2^/2 to 3 feet of this distance in an attempt to avoid striking the trailer.
Counsel for defendant in brief presents the following argument as to proof of the location of plaintiff’s automobile at the time the defendant’s truck began its left turn, viz.:
“Although -the record does not contain a clear indication of the exact *114 length of the Holmes & Barnes truck and trailer overall, let us assume that the length of the vehicle is approximately 40 feet. Since the rear of the trailer was at or near the center line ■of the highway at the time the accident occurred, and since the highway is approximately 18 feet wide, there was, at the time of the accident, approximately 10 feet of this vehicle still on the road. 'Thus, 30 feet of the vehicle had cleared the road. In other words, from the time it began its left turn, the front of the truck had traveled 30 feet south of the center line. During this time, of course, the truck made no appreciable movement toward the west, its direction of travel being toward the south. Assuming that the truck was traveling 10 miles per hour, or IS feet per second (which is probably an excessive estimate), the truck traversed the distance which it traveled in approximately two seconds. Let us further assume that Leonard was traveling only 45 miles per hour at the time of the accident (this estimate is almost ridiculously conservative) he would have been traveling 66 feet per second and in two seconds he would have traversed 132 feet. Therefore, taking the testimony in the most favorable manner to the plaintiff, it is obvious that Leonard was at least 132 feet east of the point of the accident when the Holmes & Barnes truck began its left turn.
“All of the stopping tables which we have been able to discover indicate that a driver traveling 25 miles per hour can bring his vehicle to a stop in a distance of 70 feet from the time that danger is first noticed. Therefore, since Leonard was at least 132 feet ■east of the place of the accident when the Holmes & Barnes truck turned left, if he had been traveling at a legal rate of speed of 25 miles per hour he could easily have stopped in 70 feet, a little ■over half the distance between himself .and the truck.
“If the truck took as long as 3 seconds (as it would at approximately 7 miles per hour) to reach the point of collision after it began its left turn, then Leonard must also have been 3 seconds away from the same spot and traveling a minimum of 66 feet per second at a rate of at least 45 miles per hour. Therefore, Leonard would have been at least 198 feet from the truck at the time the left turn was begun and the truck crossed the center line of the highway. The fact that stopping tables indicate a vehicle traveling 45 miles per hour should be able to stop in less than 198 feet after the driver recognizes danger merely indicates more clearly that Leonard was either traveling much faster than 45 miles per hour or was not keeping a proper lookout, or both. In any event, it clearly demonstrates that Mr. Leonard was guilty of negligence which was a proximate cause of the accident.
“Looking at the problem another way, when Tillman saw Leonard approximately 400 feet back, Tillman was justified in believing that Leonard was observing the speed limit provided by law and would continue to observe it. If Leonard had been driving at the •legal rate of 25 miles per hour it would have taken him more than 10 seconds to traverse the 400 feet at a rate of 37 feet per second. Tillman was legally justified in counting on this time interval since there was nothing about Leonard’s actions at that time to put Tillman on his guard. (Tr. 40) In the time interval which Tillman would have had if Leonard had been driving at the maximum legal rate of speed, Tillman could have driven the truck 150 feet at 10 miles per hour or 100 feet at 7 miles per hour and thus at either speed Tillman could have made the turn and cleared the highway by a side margin without the necessity of Leonard even slowing down from the maximum legal rate of speed as he passed the place where the accident occurred. The illegal, unreasonable and unforeseeable speed of the Leonard car was the factor which caused this unfortunate accident.”
*115 While the above quoted argument would be difficult to reject, the length of the Holmes and Barnes truck and trailer is unproven in the record. Be this as it may, if we accept defendant’s argument that the plaintiff’s car at the time the operator of the truck began his left turn was 132 feet to its rear, then had the operator of the truck looked he would have seen this car and at that close distance would have known that its speed was more than the 25 mile legal limit and in fact would have realized or should have realized that it was coming at an excessive rate of speed and that he could not safely make the left turn. Therefore, the driver of the truck was guilty of negligence which was one of the proximate causes of the accident.
It remains for us to decide whether the excessive speed of the plaintiff was also a contributing or proximate cause of the accident. Should we accept the 132 feet distance argued for by counsel for defendant, plaintiff would be guilty of contributory negligence for traveling 45 miles per hour when if he had been traveling within the speed limit of 25 miles per hour he could, according to the tables, have brought his automobile to a complete stop within 70 feet and thus have avoided the accident. Further, had he been traveling 25 miles per hour he could have come to the rear of the truck and trailer in safety for he had approximately 6 feet of pavement and ten feet of level shoulder. However, it is not necessary that this court accept counsel’s argument as being the only reason shown by the record for convicting plaintiff of contributory negligence. There is other proof by which we can definitely approximate the distance plaintiff’s automobile was to the rear of the truck at the time he decided to take action to avoid the collision. In doing so we take the distance measured by Trooper Walker of 36 feet as being the length of skid marks made by plaintiff’s automobile, and using % of a second, the reaction time, at 45 miles per hour which plaintiff himself admits that he ' was going, and using the speed chart in Blashfield 9, Ch. 134, § 6237, Pg..413, we find that during the reaction time at that speed he would have traveled 49V¿ feet, which would have placed him approximately 85]/2 feet from the truck at the time he realized the danger. According to this chart, had he been traveling 25 miles per hour, or the legal limit, he could have come to a complete stop in less than 73 feet. While we realize that this would only leave a distance of 12i/¿ feet,.from the pictures of this demolished automobile and the fact that it moved this.heavy truck trailer a distance of 18 feet in an arc and had prior to that time traveled 36 feet with its brakes locked and after the impact continued on 114 feet more and was stopped by an embankment, we feel certain that plaintiff was going much faster than 45 miles per hour which,' of course, would have placed him quite a distance to the rear of the Holmes & Barnes truck at the time it began its left hand turn. This would possibly have relieved the driver of the truck of any negligence, for, assuming that plaintiff was traveling at such a speed, he would have been such a great distance that the driver of the truck could not have estimated his speed as he could at 132 feet or 85 feet or 90 feet, and would have been within his right in assuming that he had time to safely make the left hand turn.
There is also testimony by the plaintiff that when he noticed the truck slowing down he just kept coming until he actually realized the truck was going to make a left hand turn. In other words, he did nothing although there are residences and this store along the highway at this point. He stated that he had seen a 25 mile sign close into the center of Port Allen but thought that after he had crossed the railroad track there was no further restriction.
Therefore, under the proven testimony the plaintiff is convicted of contributory negligence, for if we accept his speed of 45 miles per hour (which we believe was proven to be much greater) and the positive length of the skid marks, and estimate it according to proven speed charts, we find that if he had been traveling at the, legal rate of speed there was sufficient distance between his ear and the truck at the time it began its left hand turn for him te *116 have brought the car to a complete stop or at the legal speed sufficient room for him to have passed safely to the rear of the truck trailer. If the distance between the truck and plaintiff’s car had been so close at the time plaintiff realized that the left hand turn was going to be made, that at the legal speed he could not have avoided the accident by bringing his vehicle to a stop or safely passed to the rear thereof, then he would not be guilty of contributory negligence, but the defendant driver would be guilty of negligence which created an emergency and this would be the sole proximate cause of the accident and collision.
The Lower Court did not analyze the testimony from the standpoint of the contributory negligence of the plaintiff but merely stated there was no testimony to convict him of contributory negligence and based his decision as shown by his written reasons on a finding that the plaintiff had pulled into the south or east bound lane to pass the truck and the operator of the truck had suddenly made the left hand turn and, therefore, the sole proximate cause of the collision was the negligence of the operator of the truck in making this left hand turn without looking at a time when the plaintiff was attempting to pass.
It is impossible under the physical facts and the evidence in this record for us to ■ find that the accident occurred as the plaintiff testified, viz., that he had pulled into the south or east bound lane to pass the truck and it was then that the operator of the latter had suddenly made the left hand turn. As heretofore pointed out and from discussion of the testimony, he had not pulled into the south or east bound lane-to pass the truck, for at the great difference in the speed of the two vehicles he could never have again gotten to the rear of the truck and would most assuredly have struck it on the left hand side or left front. The entire judgment of our learned brother of the Lower Court being based entirely upon a finding that the plaintiff was in a position which the record reveals was impossible, ’ the judgment is therefore manifestly erroneous arid must be reversed.
In view of the opinion that we have reached in this matter as to the plaintiff’s claim it is unnecessary, of course, that we consider the plea of prescription filed as a bar to the intervention of the compensation insurer of the plaintiff.
For the above and foregoing reasons, it is ordered that the judgment of the District Court be annulled, voided and reversed, and that plaintiff’s suit be dismissed at his cost.