SAVOY, Judge.
This action, involving a non-collision accident, was brought by plaintiff, the owner of one truck, against the owner and liability insurance carrier of another truck.
Plaintiff’s petition alleges that at about noon on August 24,-1964, his truck, a tractor-trailer unit being driven by his .employee, Joseph E. Roberts, was proceeding in a northerly direction on U. S. Plighway 165 about two to three miles south of Pollock, Louisiana; that defendant,. Almon Greer, was ahead of plaintiff’s truck, also proceeding in a northerly direction, in defendant’s stake body truck; that plaintiff’s driver attempted to pass the Greer truck, but that Greer, suddenly and without warning or signal, máde a left turn off Highway 165 onto Powers Road, a gravel road' on the west side of the highway,'thus causing plaintiff’s driver to make an emergency stop, in the process of which plaintiff’s tractor-trailer unit “jackknifed” and went *548 out of control and off the left or western side of the highway, with resulting damages to the vehicle, and without striking defendant’s truck.
The defendants answered plaintiff’s petition, denying its material allegations and alleging negligence on the part of plaintiff’s driver, or alternatively, his contributory negligence.
Upon trial on the merits, the lower court found for plaintiff and awarded damages of $1,549.85.
From that judgment defendants have perfected this appeal.
Reducing the position taken by each' side to its basic essence, plaintiff contends that his driver had pulled into the west (his passing) lane of the highway and was more or less in the process of beginning to pass defendant when defendant made his left turn, without giving a signal. Defendants contend that plaintiff’s truck was some considerable distance behind Mr. Greer when he made the left turn, that he did signal and made the turn and was well off the highway onto Powers Road before plaintiff’s truck reached Powers Road, and that, consequently, the accident was not the fault of Greer.
The record reflects numerous conflicting versions of just what did happen in this accident, and it would be utterly impossible to reconcile them all, either as to generalities or to details.
At the time of the accident, it was a clear, dry day. The surface of Highway 165 is, and was then, concrete. Powers Road heads in a westerly direction off Highway 165, forming a “T” intersection. Both vehicles were traveling at speeds ranging from thirty to about forty-five miles per hour, and both were going north, with plaintiff’s vehicle being behind defendant’s. Those are the only facts of any import which are uncontradicted, or at least unquestioned, in the testimony of the various witnesses.
Corporal James R. Collins, the investigating State Trooper, arrived at the scene of the accident shortly after it occurred. Upon ascertaining that plaintiff’s driver claimed that no signal of defendant’s left turn was given and that defendant claimed otherwise, he examined defendant’s truck and found that the directional signal light on the rear of the truck was working, but was rather dim, and the faster the motor was raced, the faster and brighter the light became, being just barely visible and blinking at idling speed. He testified further that defendant did not state to him that he had made an arm signal. He also found and paced off the visible skid marks of plaintiff’s truck, which were one hundred and thirty-eight feet in length and commenced approximately one hundred eighty feet south of Powers Road, and that where the skid marks left off, they were followed by brush marks indicating the point where plaintiff’s tractor-trailer unit jackknifed and careened off into the left ,or western shoulder of the highway.
Joseph E. Roberts, plaintiff’s driver, testified that he was thirty or forty feet behind defendant when he commenced pulling into the left lane to pass defendant, and that the front of his vehicle was within six feet of the rear of defendant’s truck when defendant commenced his left turn, whereupon Roberts applied his brakes, jackknifed and careened off the roadway.
Defendant Almon Greer testified that he was observing plaintiff’s truck through the rear-view mirror on his front fender just prior to and at the time he made his left turn; that plaintiff’s truck was some three hundred feet behind him at the time, just even with a certain mailbox; that, as he was making the left turn, he saw the front wheels of plaintiff’s truck crossing the center line of the highway, the left front wheels being about six inches over the line into the west lane. He further testified that he turned on his directional signal light some six hundred feet or more before reaching Powers Road, and that he gave an arm signal as well.
*549 Mrs. Juanita Frazier, who was in her automobile several car lengths behind plaintiff’s truck, testified that she could see there were two trucks ahead of her, although she could not tell just how far apart they were; that plaintiff’s truck entered the left lane to pass defendant; that defendant’s truck turned left in front of it, at which time plaintiffs driver immediately threw on his brakes, lost control of the vehicle and careened off the highway. From her position, she could not see whether Mr. Greer sig-nalled his intention to turn left.
Connie Frazier, the thirteen-year-old daughter of Mrs. Juanita Frazier, who was riding with her mother at the time, testified to substantially the same basic observations as did her mother, but from her testimony, it is rather obvious that she was not actually looking in the critical direction at the critical time, and her testimony is rather vague as to what actually happened.
Mrs. Faye Silvers, who lives just across Highway 165 from Powers Road, testified that she was sitting in her dining room at the time of the accident; that she heard a noise on the highway, looked up and saw defendant’s truck on Powers Road about twenty or twenty-five steps off Highway 165 alongside a certain telephone pole; that since defendant’s truck was loaded with furniture, she thought perhaps some of it had fallen off, accounting for the noise she had heard, so she arose and walked about seven paces to her front door, at which time she then saw the cab of plaintiff’s tractor-trailer unit coming down Highway 165 backwards, it having by then just reached Powers Road. At that point in Mrs. Silvers’ testimony, a court room demonstration was made in which she paced off a distance estimated to be about equal to the seven paces or so that she had walked from her dining room to her front door, which demonstrated pacing consumed five seconds. The implication here, of course, is that plaintiff’s truck was some significantly far distance south of Powers Road at the time of defendant’s left turn.
Thomas E. Jackson, Jr., a fourteen-year-old passenger in defendant’s truck, testified that he was riding in the right front seat beside Mr. Greer; that he first realized something was occurring on Highway 165 when the Greer truck was near a cattle guard on Powers Road, at which time he looked out the right truck window and saw the cab of plaintiff’s unit going backwards off the highway just north of Powers Road. He then told Mr. Greer about it, who stopped his truck immediately and at the cattle guard two hundred ten feet west of Highway 165, as later measured by Mr. Greer. Mrs. Juanita Frazier testified that she pulled up to Powers Road after the accident, and that defendant’s truck was stopped about twenty-five or thirty feet off the highway and was not at that time near the cattle guard. Young Jackson testified further that prior to making the left turn, he could hear Mr. Greer’s directional turn signal clicking (to indicate that it was on), and that he did not recall an arm signal being given.
Finally, the testimony contains several implications to the effect that the air brake hoses leading from plaintiff’s cab to the trailer were not connected, and young Thomas Jackson testified that he recalled seeing the hoses hanging on a rack on the back of the cab after the accident, as though they had not been connected to the trailer prior to the accident. Plaintiff’s driver, however, insists that everything was properly connected, that his brakes were in good working order, that he would have had no brakes on the trailer at any time prior to the accident with the hoses unconnected, and that some part of the braking mechanism was damaged when the trailer jackknifed.
While there is considerable conflict in the testimony in the instant case, after a review of the evidence herein, we find there is sufficient evidence to support the ruling of the trial judge.
Defendants have raised the question of contributory negligence based on plain *550 tiff’s driver’s attempt to pass at an intersection. Powers Road is a small, eighteen-foot wide completely unmarked gravel road, forming a “T” intersection with Highway 165. There is no yellow line or other device to put a north-bound motorist on guard against passing. As applied to the facts of the instant case, plaintiff’s attempt to pass under those circumstances is of no import under the rationale discussed in Brown & Williamson Tobacco Corp. v. Baumgardner, (La.App., 1 Cir., 1957), 92 So.2d 107; Sheridan v. Deshotel (La.App., 1 Cir., 1960), 121 So.2d 305; and Davis v. Southern Farm Bureau Casualty Ins. Co. (La. App., 3 Cir., 1961), 134 So.2d 366.
No issue has been raised regarding the quantum of damages.
Accordingly, the judgment of the lower court is affirmed, all costs of this appeal being assessed against defendants-appellants.
Affirmed.