CULPEPPER, Judge.
This is a suit for damages for personal injuries. Plaintiff, Lee Rosette, was a guest passenger in an automobile being driven by the other plaintiff, Joseph Cas-tille. This vehicle was turning left off a paved highway onto a narrow dirt driveway when it was struck by an automobile driven by the defendant, Joseph C. Duplechin, who was engaged in a passing maneuver. The district judge held the accident was caused solely by the left turning motorist, thus denying plaintiff’s recovery against Du-plechin and his insurer. Only plaintiff, Lee Rosette, appealed.
The substantial issue on appeal is the negligence of the defendant, Duplechin.
*454 The accident occurred on Louisiana Highway 104, a two-lane, two-way, blacktopped road which, at the scene of the collision, runs generally east and west through a rural community. The highway is straight and level and the speed limit is 60 miles per hour. The weather was clear and dry.
Generally, plaintiff’s version of the accident is that he and his companions were traveling slowly along the highway in an easterly direction, looking for a place to go rabbit hunting. The driver, Castille, saw defendant’s car approaching from the rear. He went “a little bit further” and looked in the mirror again, but did not see Duplechin. Then, just as Castille was about ready to make his left turn, he looked in the mirror again and saw defendant’s vehicle. Castille testified he had his left turn blinker on by that time so he proceeded to make his left turn. The front of defendant’s vehicle struck the left rear of the Castille automobile. The impact occurred in the passing lane.
Defendant’s version of the incident is that he was driving in an easterly direction, at a speed of between 50 and 55 miles per hour, when he first noticed the slowly moving Castille vehicle approximately 200 feet ahead. His impression was that this old automobile (a 1955 Ford) was proceeding slowly down the highway in the customary manner of such aged vehicles. Duplechin testified he saw there was no intersection and having no reason to think that Castille would turn to the left, he initiated a passing maneuver. When he was in the passing lane and at a distance of about 150 feet from the Castille automobile, it suddenly turned left across the highway. Duplechin immediately applied his brakes and tried to turn to the right, to pass to the rear of the Castille automobile, but was unable to do so.
One of the factual issues is whether Castille gave a timely signal of his intention to turn left. Castille testified he turned on his left turn blinker light, but he was unable to say how far he was from the driveway when he did so. His testimony is as follows:
“A. I proceed a little bit further, than I looked in the mirror again and I didn’t see him, then when I got just about ready to make that turn, I looked in the mirror and I see him and I had put my blinker light on, then I started to make my turn.
“Q. Now, did you put your blinking light on the first time you looked in the mirror or the last time ?
“A. The last time.
“Q. The last time you looked in your mirror, what was the other car doing?
“A. Well, it looked like he was slowing down.”
The plaintiff, who was a passenger on the rear seat of the Castille automobile, testified the left turn blinker lights were turned on when they were about a block from the driveway. Another passenger, Peter Anderson, said he didn’t know whether Castille gave a left turn signal.
The defendant, Duplechin, testified he saw no left turn signal.
In his brief written reasons for judgment, the trial judge made no express finding as to whether Castille gave a timely left turn signal. However, we think it is apparent, from his finding that Duplechin was free of negligence, that he concluded no left turn signal was given. Our appreciation of the evidence is that if a signal was indeed given, it was not started until Duplechin was in the passing lane and so close to the Castille automobile that defendant was unable to avoid the accident.
Plaintiff argues that, even conceding no left turn signal was given, Duplechin was negligent in that he failed to take proper precautions upon seeing the slow moving Castille vehicle ahead. The argument is that Duplechin should have anticipated the slowly moving vehicle was going to turn or stop or make some maneuver, and hence de *455 fendant should have slowed down and blown his horn or taken other proper precautions. Plaintiff cites Callia v. Rambin, La.App., 78 So.2d 44 (2d Cir. 1955), where defendant was approaching a slowly moving school bus from the rear. The court found there was “appreciable evidence of the intention of the driver of the school bus to take some action either by stopping or turning which should have put defendant on guard.”
The present case is readily distinguishable from Callia v. Rambin on the facts. Castille was driving slowly down the highway. He was not decelerating or taking any other action which should have put Duplechin on guard that a stopping or turning maneuver was anticipated.
The defendant, Duplechin, admittedly did not blow his horn until Castille started his left turn. The applicable statute, LSA-R.S. 32:73, does not require that a passing motorist blow his horn. In Hall v. Jackson, La.App., 215 So.2d 367 (3rd Cir. 1968) we construed this statute to mean that an overtaking motorist has no duty to blow his horn unless there is an apparent necessity to do so. There was no such necessity indicated here.
Our conclusion is the present case falls within the jurisprudence that a passing motorist is free of negligence where he complies with all the highway safety rules and the accident is caused by a vehicle turning left onto an unmarked private driveway without giving a timely signal, Cruse v. Greer, La.App., 180 So.2d 547 (3rd Cir. 1965); Hall v. Jackson, supra.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.