PICKETT, Judge.
The plaintiff, Eddie York, instituted this suit for damages for personal injuries sustained as the result of a collision between a 1953 Chevrolet automobile owned and being driven by his brother, Arealus York, and a 1964 Chevrolet pickup truck owned and being driven by Loy McCrory. The suit was instituted against Loy McCrory and his insurer, State Farm Mutual Automobile Insurance Company. The defendants answered plaintiff’s suit denying liability and filed a third party demand against Arealus York, owner and driver of the 1953 Chevrolet automobile, in which the plaintiff was a guest passenger. After a trial on the merits, the district judge rejected the demands of the plaintiff and dismissed his suit at his cost. The plaintiff has appealed.
The accident occurred about 6:45 a.m., on October 26, 1966, on Louisiana Highway 621, in Ascension Parish, Louisiana. At the place of the accident, Louisiana Highway 621 is a two-lane, blacktopped highway, which runs from east to west, and is straight and level. At the time of the accident the weather was clear and the surface of the highway was dry.
Shortly before the accident occurred, Arealus York was driving his 1953 Chevrolet automobile in a westerly direction on that highway. He was accompanied by his brother, Eddie York, the plaintiff. The defendant, Loy McCrory, was driving his 1964 Chevrolet pickup truck in the same direction, behind the York vehicle. When Arealus York approached a narrow gravel lane which made a “T” intersection with Highway 621 from the south, he slowed down and turned his car to the left to enter that lane. While he was in the process of making that turn, the rear of his vehicle was struck by the McCrory truck. The collision occurred in the east bound traffic lane, near the center of that lane. The only witnesses to the accident were the plaintiff and the drivers of the two vehicles involved in it.
Arealus York testified that prior to the collision, he passed defendant McCrory’s grocery store, and saw Mr. McCrory backing his truck out to the highway. He crossed a railroad which is about one-tenth of a mile west of McCrory’s grocery store and about 500 feet east of the gravel lane intersection. After crossing the railroad, he turned on his directional light to indicate his intention to turn left, slowed down his *53 vehicle to about 5 or 10 miles per hour, checked his rear view mirror for approaching traffic from the rear, and seeing no traffic, he turned left to enter the gravel lane. He turned at an angle to enter the gravel road, and when his front wheels were off the pavement, the McCrory truck hit his automobile, and spun it around so that it was facing back to the east. After passing the McCrory grocery store, the plaintiff said he was reading the paper and did not see the McCrory vehicle until about the moment it struck the car in which he was riding. He said he saw the directional light on his brother’s car before the impact.
Mr. McCrory testified that just prior to the accident, and after crossing the railroad, he was approaching the York automobile which was traveling rather slowly. It appeared to be going on down the highway In the west bound lane. He pulled into the passing lane and picked up speed to about 50 miles per hour in order to pass the York vehicle. When he was near the York car, and having already committed himself to passing it, York turned into the left lane in front of him; and, although he applied his brakes, he was unable to avoid striking the York automobile. He testified positively that he was already in the passing lane when the other vehicle turned left; and that the turn indicator was not on.
The evidence shows that the McCrory truck skidded about 85 feet up to the point of impact, and that the truck came to a stop a few feet from the other vehicle. A photograph filed in evidence shows the skid marks in the center of the left or east bound traffic lane gradually veering to the south side of the lane. Both vehicles came to rest south of the highway.
Trooper Alfred Gonzales investigated the accident. He found the defendant’s pickup truck had laid down approximately 85 feet of skid marks in the south or passing lane. The skid marks were in a straight line and gradually veered to the left. He concluded the actual impact occurred in about the center of the passing lane. Trooper Gonzales said the York vehicle had obviously attempted to turn into a real narrow unmarked gravel lane. The testimony of Trooper Gonzales substantially corroborates the evidence of Mr. Mc-Crory.
The plaintiff contends that McCrory was negligent in attempting to pass at an intersection, particularly when he knew the intersection was there. Mr. McCrory admitted that he knew the gravel lane was there, but he said that there were about 40 “turn-ins” for houses along that highway. The evidence shows that the juncture of the graveled lane with the highway is unmarked and there are no signs indicating an intersection, nor is there a yellow line prohibiting vehicles passing at the intersection. Moreover, this factual question was obviously determined by the trial judge not to have been an intersection, because he found for the defendant. The expression of the Court in the case of Cruse v. Greer, 180 So.2d 547 (La.App.), is equally applicable to the facts in this case. In the Cruse case, the Court said:
“Defendants have raised the question of contributory negligence based on plaintiff’s driver’s attempt to pass at an intersection. Powers Road is a small eighteen-foot wide completely unmarked gravel road, forming a “T” intersection with Highway 165. There is no yellow line or other device to put a northbound motorist on guard against passing. As applied to the facts of the instant case, plaintiff’s attempt to pass under those circumstances is of no import under the rationale discussed in Brown & Williamson Tobacco Corp. v. Baumgardner (La. App., 1 Cir., 1957), 92 So.2d 107; Sheridan v. Deshotel (La.App., 1 Cir., 1960), 121 So.2d 305; and Davis v. Southern Farm Bureau Casualty Insurance Co. (La.App., 3 Cir., 1961), 134 So.2d 366.”
The law specifically authorizes a motorist on a public highway to overtake and *54 pass other vehicles on that highway, and it sets out rules to be followed by the motorists in executing such a passing maneuver. See LSA-R.S. 32:72-32:81 inclusive. Particularly appropriate to the issue presented here is LSA-R.S. 32:75, which provides:
“No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction. Acts 1962, No. 310, § 1.”
The facts and issues in the instant case are quite similar to those in McCann v. Mercer, 191 So.2d 150 (La.App.). In that case the plaintiff was traveling about 60 miles per hour when he moved into the passing lane for the purpose of overtaking and passing defendant’s slower moving vehicle ahead of him. After the plaintiff was committed to pass, the driver of the overtaken vehicle gave a left turn signal and proceeded to make a left turn, and a collision occurred. The Court held that the sole proximate cause of the accident was the negligence of the left turning driver and that the overtaking motorist was without fault. In that case, the court said:
“We are of the opinion that the trial judge was in error in finding plaintiff contributorily negligent. Plaintiff testified he was traveling about 60 miles per hour when he saw the defendant traveling at a considerably slower speed; the highway being clear, defendant moved into the passing lane when he was 298 feet from the driveway, at which time he was about 166 feet to the rear of defendant’s automobile, and defendant’s automobile in turn was about 132 feet from the driveway. The defendant put out his left arm for a left turn signal. At 60 miles per hour, plaintiff was going approximately 90 feet per second, which means that he was about 3 seconds away from the driveway. Under the circumstances, we are of the opinion that plaintiff could not or should not have discovered defendant’s dangerous situation in time to avoid the accident. Therefore, we find no negligence on his part.”
In the case of U.S. Fidelity and Guaranty Company v. Duet, 177 So.2d 302, the Court of Appeal, First Circuit, found that the passing motorist was free from negligence and the left turning driver to be solely at fault under facts and circumstances similar to those presented here. See also Goings v. State Farm Mutual Automobile Insurance Co., 158 So.2d 333 (La.App., 1st Cir., 1963); Garris v. Jabbia, 179 So.2d 486 (La.App.3d Cir. 1965); Fulgium v. Lamb, 179 So.2d 676 (La.App.2d Cir. 1965).
The evidence in the instant suit shows that the highway where the accident occurred was straight and level, visibility was good, the left side of the highway was clearly visible and free of oncoming traffic. When McCrory began his passing maneuver there did not appear to be any reason why he could not overtake and pass the slow moving York vehicle ahead of him safely and without interfering with the safe operation of any other vehicle. He was driving the pickup truck at a reasonable rate of speed, and at the time he committed himself to the passing maneuver he had no reason to suspect that the driver of the overtaken vehicle would make a sudden left turn. As soon as it became apparent that York intended to make a left turn, McCrory applied his brakes and tried to bring his vehicle to a stop, but he was unsuccessful in avoiding a collision. We are convinced that the defendant, Mc-Crory, was free from negligence; and that the sole cause of the accident was the neg *55 ligence of Arealus York who admitted that he did not see the McCrory vehicle until the very moment of the impact. If he had been keeping a proper look out, he would have seen it; and he is presumed to have seen what he should have seen.
For the reasons herein set out, the judgment appealed from iá affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.